UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
MAY 1 5 2013
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO

UNITED STATES OF AMERICA, )
)
Plaintiff, )
) No.
v. )
) **4:13CR   00186CEJ**
JOSEPH STEPHEN VACCA, and )
)
THOMAS DANIEL STRITZEL, )
)
Defendants. )

## INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNTS 1 - 3
### MAIL FRAUD

A. INTRODUCTION

At all times relevant to the Indictment:

1. Defendant **JOSEPH STEPHEN VACCA** (hereinafter referred to as "**VACCA**") was the Deputy Commissioner for the Parks Division of the City of St. Louis, Missouri.

2. Defendant **THOMAS DANIEL STRITZEL** (hereinafter referred to as "**STRITZEL**") was the Chief of the Park Rangers for the City of St. Louis, Missouri.

3. D. G. was a longtime friend of defendant **STRITZEL**.

4. D & G Supply (hereinafter referred to as "D & G") was a company formally set up and established by D. G. at the direction of and in association with defendant **STRITZEL** on or about January 30, 2006. D & G's purported business was buying, selling, and repairing handheld radios. D & G opened a bank account at Commerce Bank in St. Louis, Missouri on or

about June 22, 2006.

5. Dynamic Management Group was a company set up and established by D. G. at the direction of and in association with defendants **VACCA** and **STRITZEL** on or about February 13, 2007. Dynamic Management Group had no legitimate business operations. Dynamic Management Group opened a bank account at Southern Commercial Bank in St. Louis, Missouri on or about February 27, 2007, and both defendants **VACCA** and **STRITZEL** had access to this bank account and the ability to deposit and withdraw funds from this account.

6. G.S.S. and B.F.N. were two (2) separate and legitimate vendors of services and materials to the Parks Division for the City of St. Louis, Missouri.

B. SCHEME TO DEFRAUD

7. Beginning on or about January 1, 2005, and continuing through December 31, 2012, both dates being approximate and inclusive, in the Eastern District of Missouri and elsewhere, defendants,

**JOSEPH STEPHEN VACCA, and**

**THOMAS DANIEL STRITZEL**

acting together and aiding and abetting one another, devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from the City of St. Louis, Missouri, by means of materially false and fraudulent pretenses, representations, and promises.

8. It was a part of the scheme that during early 2005 defendants **VACCA** and **STRITZEL** falsely represented to G.S.S. that the Parks Division was in need of equipment that was not provided for or allocated in any Parks Division budget. G.S.S. agreed to allow defendants **VACCA** and **STRITZEL** to add the cost of the purported equipment into G.S.S.' monthly invoices, and G.S.S. agreed to send the excess funds received from the City of St. Louis

to Dynamic Management Group. From on or about May, 2005 to on or about June 30, 2010, defendants **VACCA** and **STRITZEL** submitted approximately forty-five (45) inflated G.S.S. invoices to the City of St. Louis, which inflated G.S.S. invoices included approximately $285,052.17 in sham charges over and above the legitimate G.S.S. charges. At the direction of defendants **VACCA** and **STRITZEL**, G.S.S. sent these excess funds which it had received from the City of St. Louis to either D & G or Dynamic Management Group. Defendants **VACCA** and **STRITZEL** then used the excess funds received for their own personal use, including but not limited to lease payments on personal vehicles, fuel costs, the payment of personal credit card charges, and other personal living expenses.

9. It was a further part of the scheme that from on or about January 26, 2007 to on or about December 14, 2011, defendants **VACCA** and **STRITZEL** submitted one and more false and sham D & G invoices to the City of St. Louis purportedly for general equipment purchases and the supply and repair of handheld radios. These false and sham invoices totaled in excess of $150,000.00, which funds were paid by the City of St. Louis, Missouri to D & G. These funds were then transferred to the Dynamic Management Group bank account and used by defendants **VACCA** and **STRITZEL** for their own personal use, including but not limited to lease payments on personal vehicles, fuel costs, the payment of personal credit card charges, and other personal living expenses.

10. It was a further part of the scheme that during in or about August, 2010, defendant **VACCA** falsely represented to B.F.N. that the Parks Division was in need of radios, radio equipment, and radio repairs that were not provided for or allocated in any Parks Division budget. At defendant **VACCA's** request and direction, B.F.N. agreed to submit invoices to the City of St. Louis which included sham charges for undelivered materials, and B.F.N. agreed to

send the funds received from the City of St. Louis based upon the sham charges to Dynamic Management Group. From on or about August 13, 2010 to on or about April 22, 2011, defendants **VACCA** and **STRITZEL** submitted approximately eight (8) invoices from B.F.N. which included sham charges for undelivered materials to the City of St. Louis. These inflated B.F.N. invoices included approximately $29,670.09 in sham charges related to the undelivered materials. At the direction of defendants **VACCA** and **STRITZEL**, B.F.N. then sent these funds received from the City of St. Louis to Dynamic Management Group. Defendants **VACCA** and **STRITZEL** used the funds for their own personal use, including but not limited to lease payments on personal vehicles, fuel costs, the payment of personal credit card charges, and other personal living expenses.

11. It was further part of the scheme, and a result of the scheme that, from on or about January 1, 2005 to on or about December 31, 2012, defendants **VACCA** and **STRITZEL** received funds of the City of St. Louis based upon the submission of the above-referenced sham and false invoices totaling in excess of approximately $464,722.26. Defendants **VACCA** and **STRITZEL** used these funds for their own personal use, including but not limited to lease payments on personal vehicles, fuel costs, the payment of personal credit card charges, and other personal living expenses unrelated to the legitimate operations of the St. Louis Parks Division.

C. THE MAILINGS

12. On or about the following dates, within the Eastern District of Missouri and elsewhere, the defendants,

**JOSEPH STEPHEN VACCA, and**

**THOMAS DANIEL STRITZEL,**

acting together and aiding and abetting one another, for the purpose of executing and attempting

to execute the above-described scheme to defraud, and to obtain money and in attempting to do so, knowingly caused to be delivered by the United States Postal Service, according to the directions thereon, checks drawn on the City of St. Louis, Missouri bank account and payable to either D & G, G.S.S., or B.F.N., said checks being mailed from the City of St. Louis, Missouri Comptroller's Office to either D & G, G.S.S. or B.F.N. in the following amounts:

| COUNT | DATE | PAYEE | AMOUNT |
|---|---|---|---|
| 1 | 8/19//2010 | D & G | $4,599.75 |
| 2 | 4/5/2010 | G.S.S. | $30,589.16 |
| 3 | 11/23/2010 | B.F.N. | $13,005.00 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.  Pursuant to Title 18, United States Code, Sections 981(a) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 1341 as set forth in Counts 1 through 3, the defendant(s) shall forfeit to the United States of America any property, real or personal, constituting or derived from any proceeds traceable to said offense.

    a.  Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offense.

2.  If any of the property described above, as a result of any act or omission of the defendant(s):

    a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold to, or deposited with, a third party;

   c.  has been placed beyond the jurisdiction of the court;

   d.  has been substantially diminished in value; or

   e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
HAL GOLDSMITH
Assistant United States Attorney